UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| ANTHONY E. RIVERA | ) | 09-23209 - SBB |
| SS#xxx-xx-2323 | ) | Chapter 7 |
| | ) | |
| Debtor(s). | ) | |
| | ) | |
| HARVEY SENDER, | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| v. | ) | Adversary Proceeding No. |
| NORMAN K. CYGAN, and | ) | 11-01378 - SBB |
| CAROL S. CYGAN, | ) | |
| | ) | |
| Defendant(s) | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

This case is before the Court on remand from the Colorado Supreme Court on an avoidance action initiated almost two and a half years ago by the Chapter 7 Trustee, Harvey Sender, against the Defendants, Norman and Carol Cygan (hereinafter "the Cygans") using his "strong-arm" powers under 11 U.S.C. § 544.

At the inception of this case in 2011, at the heart of the dispute was Colorado's real property title recording statute, C.R.S. § 38-35-122. The particular issue before the Court was whether Colorado law *required* a legal description of real property in a recorded deed of trust to effectuate a valid security interest therein. This Court, having examined the applicable statutes, the legislative history, and considered available case law on point, had determined in 2011 that the matter presented to this Court was a unique, important, and consequential, question of unsettled state law.[1]

Because the matter presented a significant issue of first impression, in an exercise of caution and cognizant of jurisdictional limitations placed on bankruptcy courts in entering final

---

[1] *See Sender v. Cygan (In re Rivera)*, 2011 Bankr. LEXIS 3599 (Bankr. D. Colo. Sept. 19, 2011) (Order Regarding Motion for Summary Judgment and Certification to the Colorado Supreme Court, Docket # 14 in the within adversary proceeding).

1

findings on matters comprising entirely of state law,[2] this Court certified the question to the Colorado Supreme Court.[3] What unfolded thereafter has been an interesting demonstration of the principle of separation of powers. This dispute has been particularly illuminating regarding the balance between the legislative and judicial branches and their interplay in shaping the development of laws.

The Colorado Supreme Court initially accepted this Court's certification in 2011 and issued an opinion on the question on June 4, 2012, answering the question before it in the negative.[4] Specifically, the Supreme Court concluded that under Colorado Law, the complete omission of a *legal description* from a recorded deed of trust was fatal and rendered the recording ineffective. The consequence of this decision would be that the Trustees could avoid the creditors lien under 11 U.S.C. §544(a) and preserve the lien for the benefit of the estate.

In response to the Colorado Supreme Court's opinion and following immediate lobbying by the Cygans with the support of the Land Title Company of Colorado (and others), on May 28, 2013, the Colorado Legislature enacted a clarification to C.R.S. §38-35-122, adding thereto new subsections 3.5, 4 and 5, which now provide in unequivocal language that the absence of a legal description, in and of itself, does not render a recording under C.R.S. § 38-35-122 defective as a matter of law.[5] That legislation made specific reference to the Colorado Supreme Court's decision in *In re Rivera*. Sometime following the legislative clarifications to C.R.S § 38-35-122, the Colorado Supreme Court withdrew its opinion in this case and vacated its previous certification by this court "as having been improvidently granted[.]"[6] Thereafter, the case was remanded back to this Court.

I. BACKGROUND

Deed of Trust

On or about June 29, 2006, Anthony E. Rivera (the "Debtor") executed a promissory note in the original principal sum of $82,113.00 payable to the Cygans (the "Promissory Note"). On June 29, 2006, the Debtor executed a Deed of Trust for the benefit of the Cygans to secure to the Cygans the repayment of the Promissory Note (the "Deed of Trust").

The Deed of Trust recites only that the property is in the City and County of Denver, State of Colorado, and has a street address of 9385 East Center Avenue #11-A, Denver, Colorado 80231 (the "Property"). The Deed of Trust intended to serve as a security instrument for the subject promissory note contains only the correct street address; it does not contain any legal description of the property.[7] The Deed of Trust was recorded in the City and County of Denver

---

[2] *Stern v. Marshall*, 131 S. Ct. 2594 (U.S. 2011) (United States Supreme Court's holding that Article I bankruptcy courts, in certain circumstances, lack the constitutional authority to issue final and binding decisions on matters governed entirely by state law.).
[3] *Sender v. Cygan,* 2011 Bankr. LEXIS 3599, n.1.
[4] *See Sender v. Cygan*, 2012 CO 43 (Colo. 2012).
[5] *See* HB 13-1307 (2013, EFFECTIVE August 7, 2013).
[6] *Sender v. Cygan (In re Rivera)*, 2013 Colo. LEXIS 634 (Colo. Aug. 19, 2013).
[7] *See* Trustee's Response to the Motion to Dismiss, Exhibit A "Deed of Trust" (Docket # 9).

on July 11, 2006 at Reception No. 2006108037.[8] Although the Deed of Trust purports to grant and convey to the Public Trustee an interest in certain property in the City and county of Denver, State of Colorado (described as: "SEE EXHIBIT A – LEGAL ATTACHED"), Exhibit A was omitted from the recording of the Deed of Trust.[9]

Debtor's Bankruptcy

On July 2, 2009, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code (the "Petition Date"). On August 18, 2009, the Defendants, through counsel, filed a Motion for Relief from Stay seeking leave to enforce their security interest in the Property.[10]

To their Motion, the Defendants attached a partial or incomplete copy of the Deed of Trust.[11] Specifically, the second page of the Deed of Trust was omitted, and the unrecorded Exhibit A containing the legal description was attached with no notation that it *had not in fact* been recorded.[12] The Trustee was provided notice of the Motion for Relief from Stay and did not oppose the relief sought by the Cygans.

The Defendants proceeded with a judicial foreclosure of the property after receiving relief from the automatic stay. An order and judgment of foreclosure was obtained on April 14, 2011 (over a year and one-half after the granting of relief from the automatic stay), which order also purportedly reformed the Deed of Trust to include the legal description of the Property.[13] It is in the Order and Decree for Judicial Foreclosure and Reforming Deed of Trust issued by the District Court of the City and County of Denver on April 14, 2011, where it became evident, ostensibly for the first time, that the recorded Deed of Trust had completely omitted Exhibit A containing the legal description of the property.[14]

Adversary Proceeding

On June 9, 2011, the Trustee commenced the within adversary proceeding against the Cygans by filing a Complaint to Avoid Transfer of Property of the Debtor Pursuant to 11 U.S.C. § 544 and Recover Transfer Pursuant to 11 U.S.C. §§ 550 and 551 (the "Complaint").[15] On July 6, 2011, the Cygans filed a Motion to Dismiss Adversary Proceeding for Failure to State a Claim upon Which Relief Can Be Granted (Summary Judgment) ("Defendants' Motion for Summary Judgment").[16] On July 27, 2011, Plaintiff filed a Response to the Motion for Summary

---

[8] *Id.*

[9] *Id.*

[10] Motion for Relief from Automatic Stay filed August 18, 2009 (Docket # 25 in main bankruptcy case, 09-23209-SBB).

[11] *Id.* at 6-10.

[12] *See id.* at 7 and 9.

[13] Cygans' Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Summary Judgment)(Docket # 5), Exhibit C, ¶¶ 8 and 10.

[14] It appears that perhaps, it was the Order and Judgment of foreclosure of the District Court that first brought the issue of the unrecorded Exhibit A, or legal description, to the Trustee's attention. However, the record does not distinctly speak to the fact which is not pertinent for purposes of the matter before the Court at this time.

[15] Docket #1 (Adversary Proceeding Case no. 11-1378).

[16] Defendants' Motion for Summary Judgment (Docket #5). The Defendants attached to the Motion to Dismiss, several exhibits for the Court's review and request the Court to treat such Motion as a summary judgment motion

Judgment and Cross Motion for Summary Judgment ("Plaintiff's Response and Cross Motion for Summary Judgment").[17]  On August 8, 2011, the Cygans filed a Reply to Plaintiff's Response and Cross Motion for Summary Judgment ("Cygans' Reply").[18]

Certification to the Supreme Court

Following consideration of the Motions for Summary Judgment, on September 19, 2011, this Court entered an order certifying the following legal question of state law to the Colorado Supreme Court pursuant to Colorado Appellate Rule 21.1:

> Whether a properly recorded deed of trust provides sufficient notice of a party's interest in the property if the deed of trust contains *no legal description* and identifies the property *only* by a street address.[19]

Additionally, the Court stayed the Cygans' Motion for Summary Judgment pending a final determination of the question before the Court by the Colorado Supreme Court.

On September 30, 2011, the Colorado Supreme Court issued an order accepting the certification of this Court and ordering parties to file opening briefs.[20]  On June 4, 2012, the Colorado Supreme Court issued a written opinion concluding that under Colorado law, "[b]ecause the recorded deed of trust in this case completely omitted any legal description of the encumbered property, it was defectively recorded and therefore could not provide a hypothetical purchaser constructive notice of the Defendants' security interest in the property at the time the bankruptcy proceeding commenced."[21]

Additionally, the Colorado Supreme Court went on to find that "under the circumstances of this case, actual knowledge cannot be imputed to the trustee, and the deed of trust did not otherwise provide sufficient notice to the defendant's [sic] security interest in the debtor's property."[22]  The court returned the matter to this court for further proceedings.[23]  On June 13, 2012, however, the Cygans filed with this Court a notice advising the Court that Petitions for Rehearing had been filed with the Colorado Supreme Court.[24]

Between June 13, 2012, and August 20, 2013, upon requests of this Court, parties filed a series of status reports apprising the Court of the status of the Petitions of Rehearing before the

---

under Rule 56.  Wherefore, this Court will hereinafter treat the Defendants' Motion to Dismiss as a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(d).

[17] Response to Defendants' Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Summary Judgment) and Cross Motion for Summary Judgment (Docket #9).

[18] Defendants' Reply to Plaintiff's Response and Cross Motion for Summary Judgment (Docket #13).

[19] *See* Order Regarding Motion for Summary Judgment and Certification to the Colorado Supreme Court (Docket #14).

[20] *See* Order of Court filed October 6, 2011 (Docket #19).

[21] *See* Submission of Pleadings and Briefs Pursuant to Court's Order of October 2, 2013, Exhibit 4, p.15, ¶ 28 (Docket # 39)

[22] *Id.* at Exhibit 4, p. 16, ¶ 29.

[23] *Id.* at Exhibit 4, p.16.

[24] *See* Notice filed June 13, 2013 (Docket # 22).

Colorado Supreme Court.[25] On August 20, 2013, through their respective status reports, parties informed the Court that following the Colorado Supreme Court's written opinion issued on June 4, 2012, the Colorado Legislature had unanimously passed House Bill 13-1307, which Bill attempted to clarify the Legislature's intent under C.R.S. § 38-35-122 regarding the effects of an omission of a legal description from a recorded deed of trust.[26] In the same status report, parties also informed the Court that on August 19, 2013, the Colorado Supreme Court had issued an Order and Corrected Order of the Court, withdrawing its opinion entered on June 14, 2012, denying its previous grant of certification to the court "as having been improvidently granted,"[27] and remanding the matter back to this Court.[28]

Remand to the Bankruptcy Court

On October 2, 2013, this Court conducted a status conference based on the Colorado Supreme Court's August 19, 2013 Order and Corrected Order withdrawing its Written Opinion and Denying this Court's Certification. At the October 2, 2013, status conference, this Court directed the parties to file all briefs necessary for the Court's consideration of all issues within this case.[29]

On October 7, 2013, Plaintiff filed with the Court the following nine (9) pleadings filed with the Colorado Supreme Court:[30]

(1) Plaintiff's Opening Brief in Supreme Court Case No. 2011SA261 dated October 31, 2011.[31]
(2) Defendants' Answer Brief in Supreme Court Case No. 2011SA261 dated November 30, 2011.[32]
(3) Plaintiff's Reply Brief in Supreme Court Case No. 2011SA261 dated December 13, 2011.[33]
(4) Supreme Court Opinion in Supreme Court Case No. 2011SA261 dated June 4, 2012.[34]
(5) Petition for Rehearing of the Land Title Association of Colorado in Support of the Cygan Defendants in Supreme Court Case No. 2011SA261 dated June 18, 2012.[35]

---

[25] *See* Defendants' Status Reports at Docket #s 27, 29, 33 and 34 and Plaintiff's Status Reports at Docket #s 30, 31 and 36.
[26] *See* Defendants' Status Report (Docket # 34) and Plaintiff's Status Report (Docket # 36)
[27] *See* Defendants' Submission of Pleadings and Briefs Pursuant to Court's Order of October 2, 2013 (Docket #40).
[28] *Id.*
[29] At the October 2, 2013, status conference, this Court inquired of the parties whether additional briefing of the issues beyond what was presented to the Colorado Supreme Court was required, to which both parties agreed that no additional briefing was required and the matters were ripe for this Court's consideration.
[30] Docket #39.
[31] *Id.* Exhibit 1.
[32] *Id.* Exhibit 2.
[33] *Id.* Exhibit 3.
[34] *Id.* Exhibit 4.
[35] *Id.* Exhibit 5.

   (6) Motion of the Land Title Association of Colorado for Leave to File an Amicus Curiae Petition for Rehearing in Supreme Court Case No. 2011SA261 dated June 18, 2012.[36]

   (7) Defendants' Petition for Rehearing in Supreme Court Case No. 2011SA261dated June 28, 2012.[37]

   (8) Plaintiff's Answer to Petitions for Rehearing in Supreme Court Case No.2011SA261 dated July 19, 2012.[38]

   (9) Motion of Amicus Curiae Land Title Association of Colorado to File Supplement to Petition for Rehearing in Supreme Court Case No. 2011SA261 dated August 16, 2012.[39]

On October 10, 2013, Defendants filed with this Court the following additional pleadings for the Court's consideration of the herein issues:[40]

   (1) Motion of Land Title Association of Colorado and Defendants to Vacate and Withdraw Opinion with Supplemental Authority in Supreme Court Case No. 2011SA261 dated July 23, 2013.[41]

   (2) Plaintiff's Objection to Motion to Vacate and Withdraw Opinion in Supreme Court Case No. 2011SA261 dated August 8, 2013.[42]

   (3) Land Title Association of Colorado and Plaintiff's Reply in Support of Motion to Vacate and in Opposition to Trustee's Objections in Supreme Court Case No. 2011SA261 dated August 13, 2013.[43]

   (4) Supreme Court's Order of Court – Corrected in Supreme Court Case No. 2011SA26 dated August 19, 2013.[44]

Consequently, this matter is once again before the Court for consideration of Defendants' Motion for Summary Judgment, Plaintiff's Cross Motion for Summary Judgment, and the Reply.

As a preliminary matter, the Court notes that in their Motion to Dismiss filed July 6, 2011, the Cygans requested that said Motion be treated as a summary judgment motion pursuant to Rule 56.[45] Furthermore, the parties agreed that no material facts are in dispute and the issue before the Court was purely a question of law.[46] Specifically, that question was, in the context of a bankruptcy trustee's strong arm powers under 11 U.S.C. § 544(A), whether a properly recorded deed of trust in Colorado provides sufficient notice of a party's interest in the property if the

---

[36] *Id.* Exhibit 6.
[37] *Id.* Exhibit 7.
[38] *Id.* Exhibit 8.
[39] *Id.* Exhibit 9.
[40] *See* Defendants' Submission of Pleadings and Briefs Pursuant to Court's Order of October 2, 2013 (Docket #40).
[41] *Id.* Exhibit A.
[42] *Id.* Exhibit B.
[43] *Id.* Exhibit C.
[44] *Id.* Exhibit D.
[45] Cygans' Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Summary Judgment)(Docket # 5).
[46] *See* Response to Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted (Summary Judgment) and Cross Motion for Summary Judgment (Docket #9).

deed of trust contained *no legal description* of the property, but identifies the property by a street address, only.

This Court, having reviewed and considered the pleadings and briefs submitted by the parties, and being otherwise advised, hereby enters the following findings, conclusions and order.

## II.     LEGAL STANDARD

As noted above, the Plaintiff seeks to assert his "strong arm" powers under 11 U.S.C. § 544(a)(3) to avoid the Cygans' lien on the Debtor's property. The Trustee argues that because the Cygans' Deed of Trust did *not contain any legal description* of the property, despite having been indexed in the appropriate recording office and containing the correct and complete street address of the property, it was unperfected as of Rivera's petition date.

Trustee's Position

Initially, the Trustee had argued that because the Deed of Trust completely omitted the legal description of the subject property, it failed to provide sufficient notice of the Cygans' lien to subsequent interest holders pursuant to C.R.S. §§ 38-35-109(1) and 38-35-122. Accordingly, the Trustee argued he was entitled to an avoidance of the Deed of Trust under 11 U.S.C. § 544(a)(3) and could recover the property for the benefit of the estate pursuant to 11 U.S.C. § 550(a)(1).

Subsequent to the Colorado Supreme Court's decision, the Legislature's passing of the clarifying statutory language in HB 13-1307, and the withdrawal of the Supreme Court's opinion and remand to this Court, the Trustee now advances the following two arguments as to why he should still prevail:

First, the Trustee appears to be asserting that HB 13-1307 did not change the law in Colorado regarding recording of deeds of trust, but only clarified where actual and inquiry notices are concerned, circumstances may exist where even in the absence of a legal description of a property; a subsequent purchaser is imputed with notice. However, because only constructive, and not actual or inquiry notice, may be imputed to a Trustee as a hypothetical *bona fide* purchaser as of the commencement of a bankruptcy case, HB 13-1307 does not apply.[47]

Second, the Trustee argues that to the extent HB 13-1307 changed the law in Colorado, application of the law to this case would be unconstitutional under both state and federal law. It would violate Article II of Section II of the Colorado Constitution, which prohibits retrospective application of laws and the Supremacy Clause of the United States Constitution because it would divest the Trustee of vested rights.[48]

---

[47] *See* Defendants' Submission of Pleadings and Briefs Pursuant to Court's Order of October 2, 2013, (Docket #40) Exhibit B at p. 2-3 (Objection to Motion to Vacate and Withdraw Opinion filed by Maria Flora on August 8, 2013, with the Colorado Supreme Court.).
[48] *Id.* at 6-7.

Cygans' Position

The Cygans initially argued that under Colorado law, as interpreted by Judge Tallman in *Hill v. Taylor*,[49] when a recorded deed of trust contains an accurate street address but a defective legal address, inquiry notice is satisfied.[50] This opinion and HB 13-1307 are aligned. By that reasoning, the Cygans argued the lack of a legal address with a correct street address was sufficient for inquiry notice. And, if the Trustee was put on inquiry notice, that could constitute constructive notice and bar the Trustee's exercise of his strong arm powers under 11 U.S.C. § 544(a).[51]

In response to the Trustee's post-HB 13-1307 arguments, the Cygans asserted the following. First, the Cygans allege that contrary to the Trustee's argument, inquiry notice can be imputed to a trustee under federal law.[52] Second, since HB 13-1307 was clarifying legislation specifically enacted in response to the Colorado Supreme Court's opinion in this case, the statute does not have an unconstitutional retrospective effect or application here.[53]

Applicable Bankruptcy Law

11 U.S.C. § 544(a)(3) provides as follows:

> (a) The trustee shall have, *as of the commencement of the case*, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> . . .
> (3) *a bona fide purchaser of real property*, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.[54] [emphasis added]

In turn, 11 U.S.C. § 550(a) provides, in pertinent part, that "to the extent that a transfer is avoided under section 544 . . . [] the trustee may recover, for the benefit of the estate, the property transferred[.]"[55] Furthermore, 11 U.S.C. §551 provides that "[a]ny transfer avoided

---

[49] 422 B.R. 270 (Bankr. D. Colo. 2009).
[50] *See* Trustee's Response to the Motion to Dismiss, (Docket # 9) Exhibit A "Deed of Trust," p.2.
[51] *See generally* Defendants' Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Summary Judgment) (Docket #5).
[52] *See* Petitioners' Reply in Support of Motion to Vacate and in Opposition to Trustee's Objections filed with the Colorado Supreme Court on August 13, 2013 at p.4. (Docket #40, Exhibit C).
[53] *Id.* at 5-8
[54] 11 U.S.C. § 544(a)(3) (2013).
[55] 11 U.S.C. § 550(a).

under section . . . 544 . . . is preserved for the benefit of the estate but only with respect to property of the estate."[56]

"Although the Trustee's strong-arm power is granted by federal statute, the determination of what liens and interests may be avoided is a question of state law."[57] Indeed, most issues as to right, title and interest in real property are governed by state laws and bankruptcy courts are bound to recognize and follow state law. The central question before the Court is whether, as of the commencement of the case, the Trustee qualified as *a bona fide purchaser of real property* under Colorado law and could thus effectively execute his strong arms powers under section 544(a)(3).

Applicable Colorado Law

The foundation of recording acts is notice. Inquiry notice is the linchpin of this discussion – did the Deed of Trust satisfy inquiry notice? "Inquiry notice requires sufficient facts to attract the attention of interested persons and prompt a reasonable person to inquire further. The receipt of inquiry notice charges a party with notice of all the facts that a reasonably diligent inquiry would have disclosed. *Colburn v. Gilcrest*, 55 Colo. 92, 94, 151 P. 909, 910 (1915)."[58]

Notice is critical due to the manner in which deeds of trust are perfected. Colorado Revised Statute § 38-35-109(1) provides as follows:

> All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record may be recorded in the office of the county clerk and recorder of the county where such real property is situated; except that all instruments conveying the title of real property to the state or a political subdivision shall be recorded pursuant to section 38-35-109.5. *No such unrecorded instrument or document shall be valid against any person with any kind of rights in or to such real property who first records and those holding rights under such person, except between the parties thereto and against those having notice thereof prior to acquisition of such rights.* This is a race-notice recording statute. In all cases where by law an instrument may be filed in the office of a county clerk and recorder, the filing thereof in such office shall be equivalent to the recording thereof, and the recording thereof in the office of such county clerk and recorder shall be equivalent to the filing thereof.[59] [emphasis added]

---

[56] 11 U.S.C. § 551.
[57] *Hill v. Taylor*, 422 B.R. at 273 (*citing Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10 Cir. 1990)).
[58] *Monaghan Farms, Inc. v. City and County of Denver By and Through Bd. of Water Com'rs*, 807 P.2d 9, 15 (Colo. 1991).
[59] Colo. Rev. Stat. § 38-35-109(1) (2013).

9

Pursuant to C.R.S. § 38-35-109, Colorado is a race-notice state where no unrecorded instrument is valid against a *bona fide* purchaser of the subject property who first records.[60] Consequently, as long as an instrument is properly recorded, subsequent purchasers have an obligation to find it at the county clerk and recorder's office and are considered to have constructive notice even if they do not locate it.[61] What constitutes "properly recorded" is not expressly defined in C.R.S. § 38-35-109. However, some instruction has been provided in C.R.S. § 38-35-122.

At the commencement of the underlying bankruptcy case, Colorado Revised Statute § 38-35-122 provided as follows:

> **38-35-122. Inclusion of street address and assessor information with legal description.**
>
> (1)(a) All documents of title relating to real property, including instruments creating a lien on real property, except mechanics' liens and judgment liens, *shall include as an aid to identification, immediately preceding or following the legal description of the property, the street address or comparable identifying numbers, if such address or numbers are displayed on the property or any building thereon.*
>
> (b) Preparers of conveyance documents may include as an aid to identification, immediately preceding or following the legal description of the property, the assessor's scheduled number or parcel number.
>
> (2) Should any variance or ambiguity result from the inclusion of a street address identifying number, or assessor's scheduled number or parcel number on a document, the legal description of the property shall govern.
>
> (3) The fact that a document of title does not contain an address, identifying number, or assessor's scheduled number or parcel number shall not render the document ineffective nor render title unmarketable if the legal description appears therein.

In interpreting C.R.S. § 38-35-122, the Colorado Supreme Court had found that a deed of trust that omits a *legal description* of a property altogether fails to provide notice of the lien to subsequent purchasers as a matter of law.[62] However, as stated above, in 2013, the Colorado Legislature passed HB 13-1307, clarifying C.R.S. § 38-35-122. Once that legislation[63] was effective, the Colorado Supreme Court withdrew its opinion interpreting the statute.

---

[60] Colo. Rev. Stat. § 38-35-109(1)("This is a race-notice statute").
[61] *Franklin Bank v. Bowling*, 74 P.3d 308 (Colo. 2003).
[62] *Sender v. Cygan*, 2012 CO 43 at *P4.
[63] HB 13-1307 does not contain the word "amend" or any derivation thereof.

The resulting legislation, Colorado Revised Statute § 38-35-122, now contains three new clarifying subsections, which provide as follows:

> (3.5) **Legislative declaration.** (a) The general assembly finds, determines, and declares that in In re Rivera, 2012 CO 43 (also referred to as Sender v. Cygan), the Colorado supreme court held that a recorded deed of trust that completely omits a legal description is defectively recorded and cannot provide constructive notice to a subsequent purchaser of another party's security interest in the property.
>
> (b) By enacting House Bill 13-1307, enacted in 2013, *it is the intent of the general assembly to clarify*, for parties that currently have an interest in real property or that will acquire an interest in real property in the future, that, *notwithstanding the holdings and conclusions in In re Rivera, the fact that a recorded document omits a legal description is not, by itself and without regard to the totality of the circumstances*, determinative of whether the document:
>
> (I) *Is valid against any person obtaining rights in the real property; or*
>
> (II) *Is valid or invalid.*
>
> (4) The fact that a document purporting to affect title to real property, *whether recorded before or after August 7, 2013*, does not contain or include a legal description of the real property may, in the totality of the circumstances, but does not necessarily:
>
> (a) Render defective, invalid, or void the recording of the document in the office of the county clerk and recorder of the county where the real property is situated; or
>
> (b) Determine whether the document is valid against a person obtaining rights in the real property.
>
> (5) The fact that a document purporting to affect title to real property, *whether executed before or after August 7, 2013*, does not contain or include a legal description of the real property may, in the totality of the circumstances, but does not necessarily, determine whether the document is valid or invalid.[64]
>
> [emphasis added]

---

[64] *See* H.B. 13-1307; *see also* Colo. Rev. Stat. § 38-35-122 (2014).

Of singular importance and consequence of this legislation, the Colorado Legislature signaled its intent to *clarify* the existing statutory language in C.R.S. § 38-35-102, and to vitiate – if not expunge – the Colorado Supreme Court's holding in *In re Rivera*. The Legislature made it clear, without qualification or reservation, that it thought that the Colorado Supreme Court had not interpreted and applied C.R.S. § 38-35-122 as the Legislature had originally intended. HB 13-1307 was more a tool to clarify existing law and rectify what the Legislature saw as incorrect application of the current law, than it was a tool to modify the statute or formulate new law.

As a matter of initial review, this Court must determine whether the new Colorado Revised Statute § 38-35-122, subsections (3.5) – (5), effective August 7, 2013, apply to the case at hand. If the new statute applies, then the Trustee is not entitled to judgment as a matter of law. In that circumstance, issues remain in dispute about whether under the specific factual circumstances of this case, the Trustee had inquiry notice such that he would not qualify as a hypothetical *bona fide* purchaser under Colorado law. If however, a retroactive application of HR 13-1307 may not be employed here, then this Court must go on to determine whether the Trustee is entitled to relief as a *bona fide* purchaser under the Colorado law as it existed prior to the enactment of the clarifying statute.

Retroactive Effect of Amendments under Colorado Law

The Colorado Constitution prohibits the passage of *ex post facto* and retrospective laws. Specifically, Article II, Section II of the Constitution of Colorado provides that

> No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly.[65]

"Legislation can be applied 'prospectively,' 'retroactively,' or 'retrospectively.' Legislation is applied prospectively when it operates on transactions that occur after its effective date, and retroactively when it operates on transactions that have already occurred or rights and obligations that existed before its effective date."[66] Additionally, in Colorado, a distinction is made between the words retroactive and retrospective to distinguish constitutionality of particular legislation.[67] "Legislation that is retroactive in its application is not necessarily unconstitutional, whereas legislation that is also retrospective in its application is unconstitutional."[68] Moreover, the Colorado Constitution article II, § II uses the words *retrospective* as a "reference to civil cases, and as to such cases it is synonymous with the term

---

[65] Colo. Const. Art. II, Section II (2013).
[66] *Ficarra v. Dep't of Regulatory Agencies, Div. of Ins.*, 849 P.2d 6, 11 (Colo. 1993)(citation omitted).
[67] *See Id.* at 12 ("[U]nder our state constitution, some retroactively applied civil legislation is constitutional, and some is not, and it is helpful to mark this distinction by using the term retrospective to apply only to legislation whose retroactive effect violates the constitutional prohibition"); *see also City of Golden v. Parker*, 138 P.3d 285, 290 (Colo. 2006)("In order to distinguish legislation that is merely retroactive, we use the term "retrospective" only in regard to legislation that 'impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'")
[68] *Id.*

*ex post facto*, as applied to the criminal law[,]"[69] rendering *retrospective* legislation unconstitutional under Colorado law.[70] Colorado statutes "should be construed prospectively, so as not to affect the legal character of past transaction, unless the intention so to do is unequivocally expressed by the Legislature."[71]

Consequently, there is a two-step process for deciding whether the new subsections 3.5, 4 and 5 are constitutional. The Court must "determine whether the General Assembly intended the challenged statute to be retroactive and, if so, whether the statute is unconstitutionally retrospective."[72]

Legislative Intent

As noted above, C.R.S. § 38-35-122(3.5)(b) provides that the intent of the Colorado Legislature with respect to the amendments was to "clarify . . . that the fact that a recorded document omits a legal description is not, by itself and without regard to the totality of the circumstances" determinative of the validity of the recorded document.[73] Additionally, subsections (4) and (5) make it clear that the clarification applies to all documents *whether recorded or executed before or after August 7, 2013*.[74] The specific and unequivocal language used by the Legislature regarding new subsection 3.5 demonstrates that it applies to all *present and future interests* in real property.[75]

Moreover, in as much as the Colorado General Assembly expressly targeted the Colorado Supreme Court's *Rivera* opinion, HB 13-1307 makes it eminently and unqualifiedly clear that it was the legislators' intent to apply the clarifying statutory language to pending, existing and future interests in real property. Indeed, if there was any hint of a doubt as to the intent of the Legislature in this matter, the Colorado Supreme Court's vacation of its own opinion and remand to this Court dispatches any such prospect.

Retrospectivity

A statute is unconstitutionally retrospective when "it takes away or impairs vested rights that were acquired before the unlawfully retrospective law was passed,"[76] or creates a "new obligation, a new duty, or new disability."[77] "Once vested, rights survive the attempt to repeal them retrospectively."[78]

---

[69] *French v. Deane*, 19 Colo. 504, 512-513 (Colo. 1894).
[70] *Id.*
[71] *British Am. Assurance Co. v. Colo. & S. Ry.*, 52 Colo. 589, 600, 125 P. 508 (1912). *See also California Co. v. State*, 141 Colo. 288, 348 P.2d 382 (1959), appeal dismissed, 364 U.S. 285, 81 S. Ct. 42, 5 L. Ed. 2d 37, reh'g denied, 364 U.S. 897, 81 S. Ct. 219, 5 L. Ed. 2d 191 (1960).
[72] *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 444 (2000).
[73] Colo. Rev. Stat. § 38-35-122 (3.5)(b).
[74] Colo. Rev. Stat. § 38-35-122 (4) and (5).
[75] Colo. Rev. Stat. § 38-35-122 (3.5)(b).
[76] *Abromeit v. Denver Career Serv. Bd.,* 140 P.3d 44, 50 (Colo. Ct. App. 2005).
[77] *Id.*
[78] *Id.* (citing *Ficarra*, 849 P.2d at 15).

> A statute operates retrospectively if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past….
>
> "A right is only vested when it is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence." *People v. D.K.B.*, 843 P.2d 1326, 1331 (Colo.1993). *The enactment of a statute that alters the litigation posture of the parties to a pending lawsuit in regard to inchoate rights is not retrospective*. Retroactive application of a statute is not rendered unlawful merely because the facts upon which it operates occurred before adoption of the statute.
>
> Moreover, contemporary precedent also demonstrates that expectations of parties to litigation are not equivalent to vested rights.[79]

In *City of Greenwood Village*, the parties were in the midst of litigation, as they are here, when the Colorado Legislature amended the controlling statute. The Colorado Supreme Court, sitting *en banc*, found that legislation impacting a dispute between Greenwood Village and Centennial over the annexation or incorporation of portion of Arapahoe County was not unconstitutionally retrospective. Following the Tenth Circuit's review of Colorado law in *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*,[80] the Colorado Supreme Court found that when parties are litigating, "a right cannot be considered vested unless it be something more than such a mere expectation as may be based on an anticipated continuation of a present given law."[81] In so holding, the Colorado Supreme Court found that "(1) plaintiffs' rights in challenging the district were inchoate, and (2) the Assembly's action 'was designed to promote what the Legislature deemed a 'public purpose' in response to a troublesome situation.'"[82]

Subsequent to *City of Greenwood Village*, the Colorado Supreme Court refined the test for when a right is vested by articulating the following three factors: "(1) whether the public interest is advanced or retarded; (2) whether the statute gives effect to or defeats the *bona fide* intentions or reasonable expectations of the affected individuals; and (3) whether the statute surprises individuals who have relied on a contrary law."[83]

## III. DISCUSSION

This Court must therefore decide whether the Chapter 7 Trustee had acquired vested rights in the avoidance action at the time the Legislature passed HB 13-1307. For purposes of 11 U.S.C. § 544(a), a Trustee's status as a *bona fide* purchaser for value is deemed to come into being as of the commencement of the bankruptcy case.[84]

---

[79] *City of Greenwood Village v. Petitioners*, 3 P.3d at 444-446 (emphasis provided)(citations omitted).
[80] 739 F.2d 1472 (10th Cir. 1984).
[81] *City of Greenwood Village* at 445 (citing *Perry v. Denver*, 27 Colo. 93, 96 (1899)).
[82] *Id*. at 446 (citations omitted).
[83] *City of Golden v. Parker*, 138 P.3d 285, 290 (2006).
[84] *See* 11 U.S.C. § 544(a).

14

Based on the analysis of the three factors for determining when a right has vested, the Court finds that the Trustee never had a "right" in statute or common law; only a prospective avoidance opportunity ultimately founded on state law – state law as enacted and clarified by the Colorado Legislature.

First, the Court considers whether the public interest is advanced or retarded by retroactive application of the amendment. Second, the Court examines the effect of the amendment on the parties' reasonable expectations, specifically, the Trustee's expectations in this case. Third, the Court will analyze whether the amendment would surprise the Trustee due to his reliance on contrary law.

Public Interest

Recording acts are a foundational principle in American *jurisprudence*. "The earliest record of a deed in the United States is an original instrument written into a 1627 record book of [Plymouth] colony."[85] "By the time of the Revolution, the English colonies all had adopted laws for recording conveyances."[86] Clearly, the public interest in recording statutes has stood the test of time.

Their importance to property law cannot be overstated and the necessity for clarity is equally important. "Recording statutes are enacted to protect the public so that subsequent good faith creditors and purchasers are put on notice of prior transactions which may affect their title or security interest. Courts usually give a liberal interpretation to these statutes to accomplish that purpose."[87] "Courts sometimes overlook the technical formalities of recording to accomplish an equitable operation of [a recording] statute." [88]

After the Colorado Supreme Court issued its *In re Rivera* decision leaving significant doubt as to the status of untold numbers of deeds of trust recorded without a complete legal description, there was uproar by Colorado title companies.[89] It was at that point that the Colorado Legislature entered the fray to clarify Colorado's recording statute, C.R.S. § 38-35-122. HB 13-1307 was passed as an immediate and direct result of the Colorado Supreme Court's decision in this case. The Legislature identified *Rivera* by name,[90] leaving no doubt as to its intent.

There is no dispute, there is no question: it is in the public interest to have explicit, consistent, and predictable recording statutes. The Legislature has determined that HB 13-1307 is the means to that end and it is incumbent upon this Court to apply the law as provided to it by the state of Colorado.

---

[85] 1 Patton and Palomar on Land Titles § 4 (3d ed.)(2013).
[86] *Id.*
[87] Norman Singer, Statutes and Statutory Construction, § 70:3,pg 537 (citing *Lockhart v. Garden City Bank & Trust Co.,* 116 F.2d 685 (C.C.A. 2d Cir. 1940)(other citations omitted).
[88] Norman Singer, Statutes and Statutory Construction, § 70:3,pg 539 (citing *Union Bank v. Monroe County Bank.* 35 Ala. App. 168, 44 So. 2d 799 (1950)).
[89] Motion of Land Title Association of Colorado and Defendants to Vacate and Withdraw Opinion with Supplemental Authority in Supreme Court Case No. 2011SA261 dated July 23, 2013 (Docket #40, Exhibit A).
[90] *See* HB 13-1307.

Reasonable Expectations

As has been previously established, parties to litigation do not have a vested right if that right is dependent on the continued existence of a statute or common law "[A] right is vested if it survives 'the repeal of a statute or the abrogation of the common law from which [it] may have originated.'"[91] A judgment is not dependent on a statute or common law. Once a judgment has been entered in favor of a party, that party's rights become vested according to the terms of the judgment.[92] This principle has had solid footing in American *jurisprudence* since the late 19th century. "It is not within the power of a legislature to take away rights which have been once vested by a judgment."[93] On the other hand, until a judgment has entered, if the legislature changes the applicable statute, a party's rights can be altered.

> A cause of action is inchoate, and is contingent as well as unenforceable until it is reduced to judgment. As the court explained in *In re Consolidated United States Atmospheric Testing Litigation*:
>
>> A cause of action does not afford the holder the traditional bundle of rights associated with the ownership of property. Instead, it represents a right to assert a claim for compensation or some other form of judicial relief. Its value is contingent on successful prosecution to judgment. Thus, to the extent it is entitled to due process protection, that protection focuses on assuring access to fair procedures for its prosecution.[94]

The Trustee's strong arm powers are based on both the Bankruptcy Code and applicable state statutes. The Oklahoma bankruptcy court was faced with a similar issue where the trustee was attempting to avoid a transfer made by the debtors to a religious organization.[95] The passage of the Religious Liberty and Charitable Donation Act after the petition date eliminated the trustee's cause of action.

> The avoidance powers of a bankruptcy trustee are creatures of statute. They are subject to amendment or repeal at any time. The Trustee has no vested right in a statutory remedy unless and until he secures a judgment based upon that statute. *See McCullough v. Virginia*, 172 U.S. 102, 123–124, 19 S.Ct. 134, 43 L.Ed. 382 (1898) ("It is not within the power of a legislature to take away rights which have been once vested by a judgment. *Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases*.") (emphasis added). This adversary proceeding has not yet gone to

---

[91] *City of Golden v. Parker*, 138 P.3d at 293.
[92] *See City of Memphis v. U.S.*, 97 U.S. 293 (1877).
[93] *McCollough v. Com. of Virginia*, 172 U.S. 102, 123 (1898).
[94] *American Freight System, Inc. v. Interstate Commerce Commission (In re American Freight System)*, 179 B.R. 952, 962 (Bankr. D. Kan. 1995)(citations omitted).
[95] *Miller v. Grace Followship, Inc. (In re Witt)*, 231 B.R. 92, 95 (Bankr. N.D. Ok 1999).

judgment; accordingly, the Trustee has no vested cause of action under either § 544 or § 548 as they existed prior to the passage of the [Religious] Liberty [and Charitable Donation] Act.[96]

Although the *Witt* case applied federal law to the trustee's underlying cause of action, the principle that the trustee's ability to exercise its strong arm powers can be eliminated at any time prior to the entry of a judgment holds true under Colorado law. That principle was the foundation for the Colorado Supreme Court's statement in *Greenwood Village* that "[t]he enactment of a statute that alters the litigation posture of the parties to a pending lawsuit in regard to inchoate rights is not retrospective."[97]

In this case, the Trustee has a cause of action for avoidance of the Cygan's lien. This is an inchoate right to pursue litigation against the Cygans. Until the Trustee receives a judgment, he has a statutory *opportunity*, not a right, to avoid the Cygans' lien against the Debtor's property. His reasonable expectation is subject to and contingent upon state law which can be created, amended, clarified, or repealed prior to the entry of his judgment. It is a long standing principle that entry of a judgment results in the vestment of a right. However, prior to receipt of a judgment, litigants' rights are not vested.

Since this principle of law has been discussed by the United States Supreme Court dating back to the late 1800's, the Trustee should have expected that the grounds on which his cause of action were based could be modified, clarified, or eliminated just as they were in *Witt*.

Surprise Due to Reliance on Contrary Law

There could be no unqualified reliance on contrary law since HB 13-1307 clarified, not amended, the existing law. As discussed in the previous section, it has been well established that a right does not vest until it no longer is dependent on the existence of a statute or common law.

According to the Colorado Supreme Court, surprise due to reliance on contrary law is determined at the time the parties originally acted,[98] in this case, when the Trustee filed the complaint. At that time, the Colorado recording statute was not clear as to the effect a missing legal description would have on the validity of a lien. That is why it was necessary for this Court to certify the question, in its entirety, for the Colorado Supreme Court. However, the Colorado Legislature disagreed with the Colorado Supreme Court's interpretation of the law and passed *clarifying* legislation in order to finally resolve the matter.

If the statute resulted in that much confusion among those whose job it is to interpret the law, this Court cannot see how the Trustee could have been assured of a result in either direction. Therefore, retroactive application of HB 13-1307 could not be a complete or total surprise to the Trustee.

Application of the three *DeWitt* factors to determine whether the Trustee's right had vested established that it had *not vested*. The Trustee did not have a judgment on which to rely.

---

[96]*Id.* at 99.
[97] *City of Greenwood Village* at 444.
[98] *City of Golden v. Parker,* 138 P.3d 249.

Instead, his right was dependent on a statute that was so ambiguous that the state's most venerable legal authorities could not agree on its application. Since the Trustee did not have a vested right, application of HB 13-11307 in this case is permissibly retroactive and not unconstitutionally retrospective.

## IV. DEFENDANTS' SUMMARY JUDGMENT MOTION AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Based on the foregoing, the Court is able to rule on the Defendants' Summary Judgment Motion and Plaintiff's Cross Motion for Summary Judgment. The Cygans argued in their Summary Judgment Motion that their lien was properly perfected by the filing of their deed of trust despite omitting the legal description. It is now clear to the Court that according to C.R.S. § 38-35-122 as clarified by HB 13-1307, the omission of the legal description of the real property was not dispositive. HB 13-1307 made it crystal clear that the Court must consider the *totality of the circumstances*, not a single dispositive fact.

Inquiry notice arises "[i]f the description in a deed identifies, or furnishes the means of identifying, the property conveyed…."[99] Put another way, a deed of trust is sufficient if there is enough "information 'to excite the attention of a title search and place the Trustee on inquiry notice.'"[100] The Court must answer whether the "instrument would give the purchaser a definite and tangible clue, which, if diligently followed up, would ordinarily bring the truth of the matter to light."[101] The Deed of Trust contained the correct and complete street address for the Debtor's property and was properly indexed in the appropriate recording office. With those uncontested facts, a party searching the county records would have found the Cygans' Deed of Trust by searching the grantor/grantee indices. The Court finds that the existence of the correct street address on the Deed of Trust was sufficient to provide the *bona fide* purchaser for value with inquiry notice of the existence of a lien on the Debtor's property rendering it not vulnerable to avoidance by the Trustee. As in *Guaranty Bank & Trust v. LaSalle* and *Hill v. Taylor*, the recorded document provided constructive notice of the Cygan's interest in the subject property and, thus, the Trustee does not qualify as a *bona fide* purchaser and is not vested with the power to avoid their Deed of Trust pursuant to 11 U.S.C. § 544(a)(3).

## V. CONCLUSION

After years of litigating, lobbying and legislating, this matter can, perhaps, finally be put to rest. The answer is clear that the Legislature views the omission of a legal description in a deed of trust as not fatal to its effect and perfection of a mortgage lien. Since the Trustee's rights had not vested at the time the HB 13-1307 became effective, he is bound by its added clarifying language. The Court has applied a totality of the circumstances test to the validity of the Cygan's lien and has found that it was perfected as of the Petition Date. Consequently, the Trustee cannot avoid the Defendant's lien.

---

[99] *Guaranty Bank and Trust Co. v. LaSalle Nat'l Bank Ass'n*, 111 P.3d 521, 524 (Colo. App. 2004).
[100] *Hill v. Taylor*, 422 B.R. at 274-275 (citations omitted).
[101] *Id*. at 277.

Based on the foregoing,

IT IS ORDERED that the Defendants' Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (Summary Judgment) is **GRANTED**; and

IT IS FUTHER ORDERED that the Trustee's Response to Defendants' Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted (Summary Judgment) and Cross Motion for Summary Judgment is **DENIED**.

IT IS FURTHER ORDERED that the Clerk of the Court may close this adversary file once this Order and the accompanying Judgment become final and non-appealable.

Dated this 13th day of June, 2014

BY THE COURT

*Sid Brooks*
_____
Sidney B. Brooks,
United States Bankruptcy Judge